## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

PAMELA D. T.,                )
                             )
        Plaintiff,           )
                             )
v.                           )        Case No. 4:23-cv-62-CDL
                             )
MARTIN O'MALLEY,[1]          )
Commissioner of the          )
Social Security Administration )
                             )
        Defendant.           )

### OPINION AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

### I.   Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1]     On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Background and Procedural History

The plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on April 14, 2021. (R. 197-210). She alleged a disability onset date of October 15, 2016. (R. 197). The plaintiff alleged disability due to attention deficit disorder (ADD), anxiety, depression, neck issues, hip replacement,

2

bilateral knee replacement, right ear hearing loss, and shoulder arthritis. (R. 295). She was 47 years old on the alleged onset date. (R. 50). The plaintiff has past work as a collection clerk, disbursement clerk, and data entry clerk. (R. 51, 55). She also has a twelfth-grade education with two years of college. (R. 50, 296).

The plaintiff's application was denied on initial review and on reconsideration. (*See* R. 17, 127-130, 140-147). The plaintiff then submitted a written request for hearing, and the Administrative Law Judge (ALJ) held a telephonic hearing on June 29, 2022. (R. 17, 43-47). The plaintiff and a vocational expert (VE) provided testimony. *Id*.

In a decision dated August 1, 2022, the ALJ found the plaintiff was not disabled. (R. 38). The Appeals Council issued a decision on December 16, 2022, denying review of the ALJ's decision. (R. 1-6). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's August 1, 2022, decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that she is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined the plaintiff has not

engaged in substantial gainful activity since the alleged onset date of October 15, 2016. (R. 20).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that the plaintiff has severe impairments of "obesity, osteoarthritis and rotator cuff tear of the left shoulder, osteoarthritis of the bilateral hips with residual effects post left hip arthroplasty, degenerative disc disease of the lumbar and cervical spine, residual effects post total knee replacement of the bilateral knees, diabetes mellitus with neuropathy, anxiety, major depression, attention deficit and hyperactivity disorder, and adjustment disorder with mixed anxiety and depressed mood (20 C.F.R. 404.1520(c) and 416.920(c))." (R 20). The ALJ found that the plaintiff has non-severe impairments of hearing loss, "thyroid nodules, sleep apnea, hyperlipidemia, hypertension, bronchitis, Vitamin D deficiency, [and] history of right shoulder surgical repair." (R. 21). The ALJ also found that the claimant's migraine headaches are not medically determinable impairments. (R. 20).

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that the plaintiff's physical and mental impairments did not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in

4

compromise of the causa equina), 1.18 (abnormality of a major joint in any extremity), 1.14 (peripheral neuropathy), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive compulsive disorders), and 12.11 (neurodevelopmental disorders). (R. 21-23).

At step four, the claimant must show that her impairment or combination of impairments prevent her from performing work she has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023. Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that the plaintiff had the RFC

to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently, she can sit for six hours in an eight-hour workday, and can stand/walk for four hours in an eight-hour workday. She can occasionally climb ramps or stairs, but never climb ropes, ladders or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the left upper extremity. The claimant is able to understand, remember, and carry out detailed – but not complex – instructions, but should have no work performed in a production rate environment (such as assembly line work). She is limited to occasional interaction with the general public.

(R. 24). In explaining the RFC determination, the ALJ noted subjective statements in the record, objective medical evidence, and the Commissioner's administrative findings on initial review and reconsideration.

5

Citing the VE's testimony, the ALJ found that the plaintiff can perform her past relevant work. (R. 36). The ALJ also made alternative step-five findings, determining that the plaintiff can also perform alternative jobs existing in significant numbers in the national economy, including **mailroom clerk** (light exertion, unskilled, specific vocational preparation (SVP) level 2, DOT # 209.687-026, 100,000 jobs nationally); **inspector and hand packer** (light, unskilled, SVP 2, DOT # 559.687-074, 52,000 jobs nationally); and **small parts assembler** (light, unskilled, SVP 2, DOT # 706.684-022, 100,000 jobs nationally). (R. 37). As such, the ALJ determined that the plaintiff was not disabled. (R. 38).

## IV.    Discussion

The plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, the plaintiff challenges the RFC determination of light work, arguing that the medical evidence and her testimony support greater limitations. The plaintiff also challenges the ALJ's RFC determination that she can perform detailed but not complex instructions. In addition, the plaintiff asserts that the VE's testimony regarding (1) her past work of disbursement clerk, (2) the alternative job of inspector and hand packager, and (3) the alternative job of small products assembler contradicts the Dictionary

of Occupational Titles' descriptions. The Commissioner contends that the ALJ applied the proper legal standards and that substantial evidence supports the ALJ's decision.

### A.     The ALJ's RFC Determination

#### i.     Reduced Range of Light Work

The plaintiff first argues that the ALJ's RFC determination of light work consisting of sitting for six hours in an eight-hour workday and standing or walking for four hours in an eight-hour workday is not supported by substantial evidence. In determining a claimant's RFC, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). The focus of disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record).

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation omitted). The threshold for evidentiary sufficiency under the substantial evidence standard "is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The plaintiff argues that certain evidence supports greater physical limitations in the RFC. First, she cites her hearing testimony that she cannot stand or sit for long periods of time, and she has knee pain and walking limitations despite knee replacement surgery. (Doc. 11 at 9). The plaintiff also cites medical evidence that both her right knee replacement surgery and her left hip replacement surgery required extensive recovery time, during which the plaintiff's walking and standing was limited. *Id.* She also points to psychiatric records arising after the two surgeries, wherein her psychiatrist noted that she walked with a limp. *Id.*

The ALJ summarized the plaintiff's testimony related to her physical limitations in his decision. (R. 25-26, 59). Although the ALJ did not discuss the psychiatric records noting that she walked with a limp after her right knee and left hip replacement surgeries, the ALJ cited numerous post-surgery medical records. Specifically, the ALJ discussed that the plaintiff underwent a right knee replacement in March of 2020. (R. 28). The ALJ discussed the plaintiff's six-week follow up appointment, where the plaintiff was found to have excellent range of motion and very good ligament stability. (R. 29, 323-324). Although some weakness was noted, she felt improvement and was pleased with the surgical results. *Id.*

The ALJ also noted that the plaintiff underwent a left hip replacement in July of 2021. (R. 30). The ALJ discussed that in a follow-up appointment one month later, the plaintiff's incisions had healed nicely, and she could perform hip flexion and abduction

exercises. (R. 30, 1193). The ALJ further explained that follow-up appointments in August 2021 and February 2022, revealed continued improvement. In fact, in February 2022, the plaintiff "could put on her shoes and her laces without difficulty, unlike what she was experiencing before." (R. 30, 1219). The ALJ also cited a psychiatric record from September 2021, wherein the plaintiff reported that she had a "hip replacement surgery and has had a significant reduction in pain. She has less pain than she had previously." (R. 32, 1450).[2]

The ALJ also relied on the findings of the state agency medical consultants, Sarah Yoakam, M.D., and Suzanne Roberts, M.D. (R. 34). Dr. Yoakam concluded that the plaintiff was capable of standing and/or walking for six hours during an eight-hour workday. (R. 34, 85-86). The ALJ found this opinion to be partially persuasive, as more evidence was received on reconsideration and at the hearing. (R. 34). At the reconsideration level, Dr. Roberts determined the plaintiff could stand and/or walk for four hours during an eight-hour workday (R. 34, 118). The ALJ found this portion of Dr. Roberts' opinion to be persuasive. (R. 34).

Based on his consideration of the above evidence, the ALJ found that the plaintiff's physical impairments warranted an RFC restricting her to light work with additional limitations related to standing/walking and posture. (R. 35). Ultimately, the ALJ's decision shows that he considered the medical evidence related to plaintiff's physical impairments

---

[2]     Although the ALJ did not discuss the plaintiff's limp as observed by her psychiatrist, the post-surgery evidence discussed in the ALJ's decision amounts to substantial evidence supporting his RFC. According, an such error is harmless.

and his RFC determination limiting the plaintiff to a reduced range of light work is supported by substantial evidence. Even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). Therefore, the Court finds that the ALJ's RFC determination is free from reversible error.

### ii.   Detailed but Not Complex Work

The plaintiff also briefly argues that the ALJ's determination that the plaintiff can follow detailed instructions is not based on substantial evidence. Specifically, the plaintiff argues:

> The administrative record contains numerous progress notes from Laureate Clinic where the Claimant received treatment from Victoria McCoy, PhD and Michael Dubriwny, M.D from February 25, 2019 to June 15, 2022. (AR 442-593, 655-675, 1448-1509) The Claimant was consistently diagnosed with moderate recurrent major depression, generalized anxiety disorder and attention deficient hyperactivity disorder. (AR 442-593, 655-675, 1448-1509) Dr. Dubriwny observed several sessions where the Claimant was depressed and sad and had rapid and pressured speech. (504-505, 533, 1470) Dr. Dubriwny also observed that the Claimant had scattered thoughts. (AR 1485) Clearly, the Claimant would not be able to focus on detailed instructions if she were consistently experiencing scattered thoughts. The determination that the Claimant can perform work with detailed instructions is not based upon substantial evidence.

(Doc. 11 at 10). The court disagrees.

The ALJ's RFC determination is well-supported by the medical evidence of record. The ALJ acknowledged that the plaintiff attended regular psychotherapy with Victoria McCoy, Ph.D. and was seen numerous times by her psychiatrist, Michael Dubriwny, M.D. (R. 30-34). The ALJ also considered the plaintiff's mental diagnoses, which is evident from

his summary of the medical records, and his finding that the plaintiff's severe impairments include anxiety, major depression, and ADHD. (R. 20, 30-34).

In his decision, the ALJ summarized medical records related to the plaintiff's mental impairments and ability to focus. (R. 30-34). As it relates to the plaintiff's visits with Dr. Dubriwny, the ALJ noted that the plaintiff presented to him in February of 2019. (R. 481). At that time, the plaintiff complained that her mind was racing all the time. *Id*. Dr. Dubriwny noted that the plaintiff was hyper talkative. *Id*. Again, in January and March of 2020, the plaintiff presented to Dr. Dubriwny exhibiting rapid and pressured speech. (R. 504, 515). Dr. Dubriwny prescribed the plaintiff Adderall. (R. 514).

Dr. Dubriwny's examinations in April and July of 2020 again revealed rapid speech. (522, 533). However, at the July 2020 visit, the plaintiff denied racing thoughts. (R. 533). In June of 2021, the plaintiff reported that she was experiencing dry mouth from the Adderall, and she lowered the amount she was taking. (R. 590). Yet, in September of 2021, the plaintiff reported that Adderall was helping her "stay on track." (1450).

The plaintiff again presented to Dr. Dubriwny in December of 2021 and March of 2022 with rapid and pressured speech.  (1470, 1486). During the March 2022 visit, Dr. Dubriwny noted that the plaintiff "rambled" and was scattered. The plaintiff admitted that she had not taken Adderall that day. (R. 1485). She reported that when she does take Adderall, she feels focused and is able to complete tasks, but the medication wears off in the afternoons. *Id*. In May of 2022, the plaintiff again presented to Dr. Dubriwny with rapid

and pressured speech. (R. 1499). Dr. Dubriwny found that she was making some progress with a combination of psychotherapy and medication. (R. 1500).

Further, in evaluating the "paragraph B" criteria, the ALJ found that the plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace. Throughout his paragraph B analysis, the ALJ repeatedly recognized that the plaintiff often displayed anxious mood and rapid speech on examination.  (R. 23-24). He further noted that "no other cognitive deficits" were present on examination. *Id*. He stated that the plaintiff did not complain of having problems with attention or her ability to complete tasks during the hearing. *Id*. The ALJ recognized that although the plaintiff "was not always compliant with her medications," "these episodes were brief and, when she resumed treatment, she reported improved symptoms." *Id*. The ALJ further noted that the plaintiff reported to Dr. Dubriwny that she "taught Sunday school and was a trustee on the board at her church." *Id*.

Ultimately, the ALJ discussed all of the medical evidence that the plaintiff cites to argue that the mental portion of the RFC was not supported by substantial evidence. The ALJ also thoroughly summarized and explained other portions of the medical record that support a finding that the plaintiff can perform detailed but not complex tasks. The ALJ's discussion of the evidence was adequate, in that it was reasonable and consistent with the applicable legal standards, and substantial evidence supports the ALJ's RFC findings. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (holding that court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion); *see also Oldham*, 509 F.3d at 1257-58

(on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views).

### B.   The ALJ's Findings at Step Four

As discussed above, the ALJ found that the plaintiff "is capable of performing past relevant work as a disbursement clerk and a data entry clerk" at step four. (R. 36). In her opening brief, the plaintiff argues that she cannot perform her past job of disbursement clerk because it requires answering customers questions and verifying consumer loan application. According to the plaintiff, these tasks conflict with her RFC, which is limited to "occasional interaction with the general public." (*See* Doc. 11 at 12; Doc. 11, Ex. A). The plaintiff did not raise any challenge to the ALJ's finding that she could perform her past relevant work of a data entry clerk in her opening brief. (*See gen*. Doc. 11). In response, the Commissioner argues that the Court need not reach this issue of whether the plaintiff can perform her past relevant work as a disbursement clerk, "as her ability to perform work as a data entry clerk requires a finding of not disabled." (Doc. 13 at 12).

For the first time in her reply brief, the plaintiff argues that her data entry clerk job was "[m]ost likely" "performed in a production rate environment," which contradicts the ALJ's RFC determination that she "should have no work performed in a production rate environment (such as assembly line work)." (Doc. 14 at 2-3; R. 24). The plaintiff argues the ALJ failed to properly determine the requirements of her past work by "never asking

the VE . . . whether the data entry clerk occupation was performed in a production rate environment." (Doc. 14 at 3).

"As a general rule, issues first raised in reply briefs are waived." *Chance v. Zinke*, 2017 WL 11687505 * 1 (N.D. Okla. July, 27, 2017) (unpublished) (citing *Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) (citing *M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009)) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."); *see also  Pruznick v. Colvin*, 2016 WL 11263675, fn. 2, (N.D. Okla. Dec. 5, 2016). ("The undersigned has not addressed plaintiff's assertion, made for the first time in her reply brief"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (stating that issues inadequately presented in the opening brief are waived).[3] In addition, arguments that are "perfunctory and not sufficiently developed to allow meaningful analysis" are waived. *Stokes v. Astrue*, 2012 WL 683090 * 6 (N.D. Okla. Mar. 2, 2012) (citing *Wall v. Astrue*, 561 F.3d at 1048, 1066 (10th Cir. 2009)).

Because the plaintiff did not raise any challenge to the ALJ's finding that she could perform her past relevant work of data entry clerk in her opening brief, the Court finds that this issue is waived. (*See gen*. Doc. 11). This finding is further supported by the fact that the plaintiff's arguments related to her past work as a data entry clerk span a little over one page in her reply brief. (See, Doc. 14, p. 2-3). In this page, the plaintiff provides no explanation for why the data entry clerk job was "most likely" actually performed in

---

[3]     "[W]aiver principles developed in other litigation contexts are equally applicable to social security cases. *Smith v. Colvin*, 625 Fed.Appx. 896, 900 (10th Cir. 2015).

"production rate environment" other than noting that she had to get reports and walk them to different departments. *Id*. The Court finds that these arguments "are perfunctory and not sufficiently developed to allow meaningful analysis." *Stokes*, 2012 WL 683090 at * 6.[4]

Even without a finding that these arguments are waived, the plaintiff's arguments are not persuasive, and ***a finding of not disabled is still warranted at step four***. First and foremost, the plaintiff did not challenge her ability to perform the data entry clerk job as generally performed. At step four, the agency will generally deny benefits if the claimant retains the residual functional capacity to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Titles II & XVI: Past Relevant Work-The Particular Job Or The Occupation As Generally Performed, SSR 82-61, 1982 WL 31387, at *2; *see also* 20 C.F.R. § 404.1560(b)(2). Because the plaintiff only challenges the data entry clerk job as she actually performed it, the plaintiff has failed to set forth a reversible error.

Further, the plaintiff's argument that the ALJ delegated his step four responsibilities to the VE is unpersuasive. Step four of the sequential analysis, at which the ALJ found plaintiff not disabled, is comprised of three phases. In phase one, the ALJ must evaluate plaintiff's physical and mental residual functional capacity (RFC). *See Winfrey v. Chater*,

---

[4]      In any event, the plaintiff's own testimony regarding her tasks at the data entry clerk job did not suggest a production rate or assembly line type of environment. The plaintiff testified that the job consisted of sitting down and walking to different departments to give them reports. (R. 51). She said she worked in an office building. *Id*. "The departments were right next door to one another, so I was not out there walking long distances or anything." *Id*.

92 F.3d 1017, 1023 (10th Cir.1996) (citing *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). In phase two, he must determine the physical and mental demands of plaintiff's past relevant work. *Id*. In the third phase, the ALJ determines whether plaintiff has the ability to meet the job demands in phase two despite the mental and/or physical limitations found in phase one. *Id*.

The record reveals that the ALJ evaluated the plaintiff's RFC as set out in his decision. (R. 24). The ALJ then determined the demands of the plaintiff's past work by questioning the plaintiff at the hearing about the tasks she performed at her previous jobs. (R. 51; *supra* fn. 4). The ALJ established that plaintiff had the job of data entry clerk for at least one year, and the claimant performed the job long enough to learn. (R. 36).

The plaintiff argues that the ALJ should have asked the VE "whether the data entry clerk occupation was performed in a production rate environment." However, the ALJ questioned the VE regarding whether the plaintiff could perform her past relevant job of data entry clerk based on a hypothetical RFC, identical to the one he adopted in his decision. (R. 67-70). In fact, he expressly asked the VE whether the exclusion of a production rate environment would preclude the plaintiff performing her past jobs as actually or generally performed. (R. 68). The VE testified that the exclusion would not preclude the plaintiff from the past job of data entry clerk as actually or generally performed. *Id*. The ALJ ultimately concluded that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (R. 36).

The Court finds that the ALJ's step four evaluation is supported by substantial evidence and remand is not warranted.

Because the plaintiff has failed to show error at step four, the Court need not reach the plaintiff's arguments related to the ALJ's alternative findings at step-five. *See Sartin v. Colvin*, 2013 WL 886945 * 9, (N.D. Okla. Mar. 8, 2013) (unpublished) (citing *Qualls v. Astrue,* 428 Fed. Appx. 841, 851 (10th Cir.2011) (unpublished)); *see also Lax v. Astrue*, 489 F.3d at 1084 ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.")

## V.   Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence and free of reversible legal error. The decision of the Commissioner finding the plaintiff not disabled is therefore **affirmed**.

DATED this 31st day of March, 2024.

Christine D. Little
United States Magistrate Judge

17